# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORRAINE R. KELLEY,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 13-cv-01125-BAS(KSC)<br><br>**ORDER:**<br><br>**(1)　OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 39);**<br><br>**(2)　ADOPTING REPORT AND RECOMMENDATION IN ITS ENTIRETY (ECF NO. 37);**<br><br>**(3)　DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 29); AND**<br><br>**(4)　GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 33)** |

On May 10, 2013, plaintiff Dorraine R. Kelley ("Plaintiff"), proceeding *pro se*, filed a complaint against Carolyn W. Colvin ("Defendant"), Acting Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("SSA") to obtain judicial review of a final decision by the Commissioner of Social Security denying her disability insurance benefits. The Court then referred this matter to Magistrate Judge Karen S. Crawford, who issued a Report and Recommendation ("Report") on February 26, 2015 recommending

that this Court: (1) deny Plaintiff's motion for summary judgment, (2) grant Defendant's cross-motion for summary judgment, and (3) deny Plaintiff's request for a remand to consider new evidence submitted with her motion for summary judgment and with her opposition to Defendant's motion for summary judgment. Thereafter, Plaintiff filed objections to the Report, and the Commissioner filed a response to the objections.

I.  BACKGROUND[1]

   A.  Procedural History

On or about February 22, 2010, Plaintiff filed an application for supplemental security income ("SSI"). (ECF No. 23-5 at pp. 3-13.) In a Disability Report (Form SSA-3368) completed in connection with her application, Plaintiff stated she has degenerative disc disease, diabetes, and spinal stenosis and cannot work for the following reasons: "lack of motivation, can't stand longer than 10 minutes, trouble bending or twisting, can only lift 10 lbs, [and] pain level is 10." (ECF No. 23-6 at pp. 3-12.)

A Work History Report dated April 7, 2010 states that Plaintiff worked as a receptionist from November 1992 through June 1994. She worked five days a week for eight hours each day and was paid $10 per hour. Her duties included answering telephones and working on a computer. From January 1990 through April 1992, Plaintiff worked five days per week in food service. She worked five hours a day and was paid $8.50 per hour. Her duties included making food, taking food orders at a cash register, and working in the stock room. She carried boxes of canned food from the truck to the shelves and trash bags from the restaurant to a trash receptacle. (*Id.* at pp. 41-43, 52.) In the "Remarks" section of the Work History Report dated April 7, 2010, Plaintiff wrote that she has "severe pain 24/7"

---

   [1]   Plaintiff did not object to the following procedural and factual summaries presented in the Report.

and "cannot get out of bed to even look for a job." (*Id*. at p. 52.)

On June 23, 2010, Plaintiff was notified by letter that she did not qualify for disability benefits. (ECF No. 23-4 at p. 8.) The letter provides the following explanation for the denial of benefits: "We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work. [¶]You said you are unable to work because of degenerative disc disease, diabetes, and spinal stenosis. ¶We have determined that your condition is not so severe as to prevent you from working ...." (*Id*. at p. 8.) Three reports from the following medical providers were used to decide Plaintiffs claim for SSI benefits: (1) Dr. Noli Cava; (2) Sharp Memorial Hospital; and (3) Seagate Medical Group (Dr. Ajit Raisinghani).

Plaintiff also completed a Disability Report Questionnaire[2] which states as follows: "It is very hard to get even out of bed without pain medication. I would be hospitalized without pain medications. I cannot clean, drive, cook, bathe without pain medications.... My day begins with waking up to pain medications [,] crawling out of my bed and to the couch as soon as the medication sets in. I hurry about trying to make a bed or clean the house, care for my children and be a "Mom." My daily housework assignments are limited. Each pain pill lasts 4-6 hours (if it works). I am constantly chasing a remedy to relieve the pain.... My day ends with pain medication, muscle relaxers and a whole bunch of denials from my insurance to see the doctors.... Doctors say I will not be able to work anytime soon. I will have possible surgery-pending. Waiting appointment with neurosurgeon. My insurance will not 'o'k' a visit to the neurosurgeon. We are pushing to get me in to him. I have been waiting 3 months for clearance to see neurosurgeon and 3 weeks

---

[2] Although this document is undated, bar coding indicates that it was faxed from Myler Disability on July 28, 2010 and added to the Administrative Record on August 8, 2010.

for clearance to get an x-ray or MRI." (ECF No. 23-6 at p. 66.) At this time, Plaintiff also represented she was taking a number of medications for an infection, diabetes, back pain, and high blood pressure. Reported side effects for these medications included severe nausea, fatigue, dizziness, and headaches. (*Id.* at p. 67.)

Although Plaintiff submitted a request for reconsideration, her request was denied on August 12, 2010. (ECF No. 23-4 at pp. 14-19.) On September 12, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at pp. 21-27.) A hearing was scheduled and held on August 11, 2011. (ECF No. 23-2 at pp. 26-51; ECF No. 23-4 at pp. 42, 53, 78.) At the hearing, the ALJ considered testimony by (1) Plaintiff; (2) John R. Morse, M.D., a medical expert; and (3) John P. Kilcher, a vocational expert. (ECF No. 23-2 at pp. 26-50; ECF No. 23-4 at pp. 70-77.)

On August 31, 2011, the ALJ issued a written opinion concluding that Plaintiff did not qualify for disability insurance benefits under the SSA. (ECF No. 23-2 at pp. 1-21.) Plaintiff requested review of the ALJ's decision, arguing that the ALJ "did not rule in accordance [with] the weight of the evidence." (*Id.* at pp. 7-8.) Plaintiffs request for review was denied by the Appeals Council on March 8, 2013. (*Id.* at pp. 2-4.) Plaintiff then filed her Complaint in this action on May 10, 2013. (ECF No. 1.)

**B.  Medical Evidence**

The following is a summary of the medical evidence in the Administrative Record that was submitted in support of Plaintiff s disability claim and considered by the ALJ in reaching his decision to deny benefits on August 31, 2011:

**1.  Sharp Memorial Hospital**

On October 21, 2009, Plaintiff went to Sharp Memorial Hospital complaining of pain radiating down both legs "for the past 3 months." (ECF No. 23-7 at p. 18.) Plaintiff said she had been taking Motrin "without significant change." (*Id.* at p.

18.) An x-ray of the spine revealed "slight scoliosis." (*Id*. at p. 25.)

On December 22, 2009, Plaintiff was once again examined in the emergency room at Sharp Memorial Hospital because of "progressively worsening lower back discomfort" and pain in her legs. She reported to medical personnel at the hospital that the pain began "3 months ago without antecedent trauma or exertion." (*Id*. at p. 3.) The results of an MRI "of the lumbosacral spine ... showed mild disk bulging at L3-4, mild disk protrusion at L4-5, and mild to moderate spinal stenosis at L4-5 secondary to disk and hypertrophy of the ligamentum flavum." (*Id*. at pp. 5, 13.) The emergency room physician concluded the MRI revealed "significant disk disease, particularly on the left, likely accounting for patient's [symptoms]. As she showed no signs of cord compression [or other conditions] warranting ... surgical intervention," the emergency room doctor prescribed pain medication and referred Plaintiff to her primary care physician. (*Id*. at p. 5.)

### 2. **Dr. Noli A. Cava**

Dr. Noli A. Cava ("Dr. Cava") was Plaintiff's treating physician beginning January 5, 2010. (ECF No. 23-7, at pp. 27, 41.) In support of Plaintiff's disability claim, Dr. Cava provided medical records and/or treatment notes from January 5, 2010 through May 4, 2011. (*Id*. at pp. 38-41, 79-90, *et seq*.) Although these notes are somewhat illegible, many mention chronic low back pain, which Dr. Cava was treating with pain medication. (*Id*. at pp. 39-41, 80, 85-86, 88, 90.) Plaintiff was also being treated for diabetes at Dr. Cava's office. (*Id*. at pp. 40-41, 43, 89, 91.)

Dr. Cava's treatment notes indicate that he referred Plaintiff to physical therapy and a pain clinic for her low back pain. (*Id*. at pp. 39, 80, 81, 83, 90.) One note in the record from May 4, 2010 suggests that Plaintiff was receiving physical therapy for low back pain and would not be able to consult with a pain clinic until she completed the physical therapy. (*Id*. at p. 88.) The Administrative Record does not include evidence that Plaintiff actually had physical therapy. Although Dr. Cava's notes from June 10, 2010 state that Plaintiff was "denied" a neurosurgery

evaluation, his later notes from June 29, 2010 state that Plaintiff had been approved to obtain an evaluation by a neurosurgeon. On August 23, 2010, Dr. Cava's notes say that Plaintiff was still waiting to see a neurosurgeon. (*Id*. at pp. 85, 86, 87.) However, there is nothing in Dr. Cava's treatment notes or the remainder of the Administrative Record indicating whether Plaintiff actually had a neurosurgery evaluation.

On March 23, 2010, Plaintiff complained to Dr. Cava of pain in her right foot. (*Id*. at pp. 38, 90.) From May 4, 2010 through May 4, 2011, Dr. Cava's notes indicate Plaintiff was being treated for an open toe wound on her right foot that was causing pain and not healing. (*Id*. at pp. 79, 85, 86, 88.) During this time, on August 3, 2010, Plaintiff's right foot was evaluated by Dr. David W. Buckley at Imaging Healthcare Specialists. Dr. Buckley noted there was some soft tissue swelling and mild degenerative changes in the "first MTP joint," but he concluded there was "[n]o acute bony abnormality." (*Id*. at p. 106.)

On April 1, 2010 and again on August 1, 2011, Dr. Cava completed and submitted a Residual Functional Capacity Questionnaire in support of Plaintiff's disability claim. In both of these Questionnaires, Dr. Cava stated that Plaintiff had been diagnosed with spinal stenosis, bulging discs, and displaced discs. Dr. Cava listed the following symptoms and side effects from Plaintiff's medications: chronic pain, drowsiness, dizziness, fatigue, and nausea. Dr. Cava also indicated on both Questionnaires that Plaintiffs symptoms were severe enough to constantly interfere with the attention and concentration necessary to perform simple, work-related tasks. (*Id*. at pp. 27,121.) In the Questionnaire dated April 1, 2010, Dr. Cava noted that Plaintiff "has many other health issues [including] diabetes and migraines." (*Id*. at p. 28.) In the later Questionnaire dated August 1, 2011, Dr. Cava stated that Plaintiff "also has diabetes and that [a]ffects her vision and causes fatigue. She also has migraine headaches." (*Id*. at p. 122.)

Dr. Cava also indicated in both Questionnaires that Plaintiff was extremely

limited in her ability to function in a work situation. In the earlier Questionnaire dated April 1, 2010, Dr. Cava stated that Plaintiff could sit for two hours and stand or walk for one hour in an eight-hour day. (*Id*. at p. 27.) However, in the later Questionnaire dated August 1,2011, it was Dr. Cava's opinion that Plaintiff could sit for six hours and stand or walk for two hours in an eight-hour day. (*Id*. at p. 121.) In both Questionnaires, Dr. Cava stated that Plaintiff could only sit or stand for ten minutes at a time, would need to take frequent and lengthy breaks, could not lift more than 10 pounds occasionally, and could not use her hands, fingers or arms for repetitive tasks. (*Id*. at pp. 27-28,121-122.) In addition, Dr. Cava estimated that Plaintiff would be absent from work more than four times per month as a result of her medical condition. (*Id*. at p. 28, 122.)

### 3. Dr. Ajit Raisinghani (Seagate Medical Group)

At the request of the Department of Social Services, Dr. Ajit Raisinghani examined Plaintiff, reviewed her prior medical records, and prepared a report dated June 8, 2010. (*Id*. at pp. 49-54.) During the examination, Plaintiff reported that she suffers from chronic pain in her lower back and legs, and "the only time the pain eases up is when she takes pain medications." (*Id*. at p. 50.) Plaintiff also said that she "feels a throbbing type pain in both feet around her toes," and she has been using a cane for the last month. (*Id*.)

Based on his examination, Dr. Raisinghani reported that the range of motion in Plaintiff's lumbar spine, upper extremities (shoulders, elbows, hands, and wrists), and lower extremities (hips, knees, feet, and ankles) "is within normal limits." She also had a "full range of motion" in her neck. (*Id*. at p. 52.) Although Dr. Raisinghani acknowledged that Plaintiff had previously had an MRI showing "some mild spinal stenosis and mild disc protrusion," he concluded that her symptoms were "not typical for spinal stenosis." (*Id*. at p. 53.) He also concluded that the severity of her diagnosis was "not clear as the MRI was performed without contrast" and the results "mentioned only mild stenosis." (*Id*.) As a result of his

examination, Dr. Raisinghani concluded that Plaintiff could stand, walk, or sit for six hours in an eight-hour day; lift and carry 20 pounds occasionally and 10 pounds frequently; and bend and crouch occasionally. (*Id*.)

### 4. Other Medical Evaluations

Plaintiff's medical records were reviewed by Dr. A. Wong on June 18, 2010 and by S. Brodsky, a Disability Officer, on August 11, 2010. Both concluded based on the medical records that there is insufficient evidence in the record to support Plaintiff's claim that she is disabled by degenerative disc disease, diabetes, and/or spinal stenosis. Both noted inconsistencies between the evidence in the medical records and Dr. Cava's assessment of Plaintiff's functional capacity. (*Id*. at pp. 62-64; 72-73.)

## C. Expert Testimony at the August 11, 2010 Hearing

### 1. John R. Morse, M.D. Medical Expert

Based on the record, Dr. Morse testified that he did not believe any of Plaintiff's documented medical impairments or combination of impairments justified a finding that Plaintiff is disabled under the SSA. (ECF No. 23-2, at pp. 32-33.) Based on the available medical records, Dr. Morse acknowledged that Plaintiff does "have chronic back pain probably due to some arthritic or degenerative disc disease" and/or spinal stenosis. However, in his opinion, the degree of spinal impairment indicated by the medical records is "relatively mild." (*Id*. at pp. 32-33, 36.) According to Dr. Morse, Plaintiff's MRI report was "very non-specific," and there was no evidence in the record of "neurological deficits" or loss of motor strength. (*Id*. at p. 36.) Dr. Morse also did not find any evidence in the record to indicate Plaintiff's diabetes is serious enough to meet Social Security disability requirements. (*Id*. at pp. 33-34.)

In Dr. Morse's opinion, the medical evidence indicates that Plaintiff is capable of work at the "light level," because he believes she can sit, stand, or walk for six hours in an eight-hour day and lift 20 pounds occasionally and 10 pounds

frequently. He was unable to locate any evidence in the record to support manipulative, visual, communicative, or environmental limitations. However, Dr. Morse believes Plaintiff should be limited to occasional climbing, balancing, stooping, kneeling, crouching or crawling. (*Id*. at pp. 34-36.)

### 2. John P. Kucher, Vocational Expert

A vocational expert testified that light level, unskilled work is available locally and nationally for a person with the limitations described by the medical expert, Dr. Morse. (*Id*. at pp. 47-48.) In addition, jobs are available at a lower level (unskilled, sedentary) in the national economy but not locally. (*Id*. at pp. 48-49.) If the vocational expert relied solely on the Plaintiff's testimony and other representations that she has extreme limitations, it would be accurate to say she could not sustain a 40-hour week in the work place. (*Id*. at pp. 49-50.)

## II. LEGAL STANDARD

The Court reviews *de novo* those portions of the Report to which objections are made. 28 U.S.C. § 636(b)(1). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* But "[t]he statute [28 U.S.C. § 636(b)(1)(c)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (concluding that where no objections were filed, the district court had no obligation to review the magistrate judge's report). "Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *Reyna-Tapia*, 328 F.3d at 1121. This rule of law is well-established in the Ninth Circuit and this district. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005) ("Of course, de novo review of a [Report and Recommendation] is only required when an objection is made to the [Report and Recommendation].");

*Nelson v. Giurbino*, 395 F. Supp. 2d 946, 949 (S.D. Cal. 2005) (Lorenz, J.) (adopting report in its entirety without review because neither party filed objections to the report despite the opportunity to do so); *see also Nichols v. Logan*, 355 F. Supp. 2d 1155, 1157 (S.D. Cal. 2004) (Benitez, J.).

## III. DISCUSSION

The Commissioner's decision must be affirmed upon review if it is supported by substantial evidence and if the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. If there is evidence in the record to support more than one rational interpretation, the district court must defer to the Commissioner's decision. *Id*. "Substantial evidence means more than a scintilla but less than a preponderance. Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations and quotations omitted). A court must consider the record as a whole and weigh both the evidence that supports and detracts from the Commissioner's decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citing *Penny v. Sullivan*, 2 F.3d 953 956 (9th Cir. 1993).

After applying this standard of review, the Report recommended that this Court: (1) deny Plaintiff's motion for summary judgment, (2) grant Defendant's cross-motion for summary judgment, and (3) deny Plaintiff's request for a remand to consider new evidence submitted with her motion for summary judgment and with her opposition to Defendant's cross-motion for summary judgment.

### A. New Evidence Objection

Plaintiff attached documents to her motion for summary judgment and in

1  support of her opposition to Defendant's cross-motion for summary judgment that
2  were not included in the Administrative Record and not considered by the ALJ or
3  the Appeals Council. (*See* ECF Nos. 29 at pp. 3-19; 35 at pp. 5-26.) Plaintiff's
4  new evidence consists of medical information dated from in or about December
5  2012 through September 2014, and various financial and personal documentation
6  dated in 2014. (*Id.*)

7  Plaintiff objects to the Report claiming that she "has clearly demonstrated
8  through initial evidence and subsequent evidence [that] she most definitely comes
9  under the definition of being totally disabled." (ECF No. 39 at p. 1.) Plaintiff urges
10 the Court to consider her "new evidence" which is "clearly relevant" and
11 "material." (*Id.* at pp. 1-2.) Plaintiff argues there was good cause for her failure to
12 incorporate such evidence into the Administrative Record because, as her
13 conditioned worsened, the "required diligence and energy to acknowledge and
14 pursue all relevant evidence simply did not exist." (*Id.* at p. 2.) Instead, she relied
15 on third party professionals "to convey the relevancy of all medications and
16 treatments." (*Id.*) However, "[a]s time progressed and conversations surrounding
17 her case magnified she began investigating all the related evidence which [she has]
18 subsequently submitted." (*Id.* at p. 2.) Plaintiff also attaches additional new
19 evidence to her objection. (*Id.* at p. 4.) The Court construes this objection as
20 challenging the Report's recommendation to deny Plaintiff's request for a remand
21 to consider new evidence.

22 Under 42 U.S.C. § 405(g), a district court "may at any time order additional
23 evidence to be taken before the Commissioner of Social Security, but only upon a
24 showing that there is new evidence which is material and that there is good cause
25 for the failure to incorporate such evidence into the record in a prior proceeding."
26 42 U.S.C. § 405(g); *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164
27 (9th Cir. 2012). The Report properly construed the submission of new evidence as
28 a request for remand under Section 405(g). (Report at pp. 23-24.) For a court to

order a remand, Plaintiff must demonstrate (1) the materiality of the new evidence, and (2) good cause for failing to incorporate such evidence into the prior proceeding. 42 U.S.C. § 405(g); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

For new evidence to be material under section 405(g), the new evidence must bear "directly and substantially on the matter in dispute." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). "At a minimum, such evidence must be probative of mental or physical impairment." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). In addition, the plaintiff must "demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes*, 276 F.3d at 462.

"An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition." *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997); *see also Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511-12 (9th Cir. 1987) (plaintiff failed to show that the new evidence was material to and probative of his condition "at the relevant time—at or before the disability hearing"); *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982). Therefore, "[a]dditional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, <u>although it may be grounds for a new application for benefits</u>." *Id*. (emphasis added); *see also Sanchez*, 812 F.2d at 511-12.

The ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act since February 22, 2010, the date the application was filed." (ECF No. 23-2 at p. 14.) The disability hearing took place on August 11, 2011, and the ALJ issued a written opinion concluding that Plaintiff did not qualify for disability insurance benefits on August 31, 2011. (ECF No. 23-2

1    at pp. 12, 26.) Plaintiff's request for review was denied by the Appeals Council on
2    March 8, 2013. (*Id.* at pp. 2-3.)

3    Plaintiff's new medical evidence includes a letter dated July 18, 2013 from
4    her treating physician for the six prior years, Dr. Cava, purportedly attaching
5    several documents. (ECF No. 29 at p. 3; *see also* ECF No. 35 at p. 23.) The letter
6    states that Plaintiff's "prognosis for progress in her overall health is at best
7    negligible" given her advancing age, increase in prescribed medication, the need for
8    additional specialists, including Dr. Navarro and Dr. White, and an overall decline
9    in medical condition. (*Id.*) Plaintiff also provides a medical record documenting an
10   office visit with Dr. Rosa Navarro of Navarro Pain Control Group, Inc. on February
11   25, 2013 noting:

> 50 year with low back pain that radiates to bilateral lower extremities for four years. The pain is severe in the legs. The ultrasound for clot in the legs was negative. MRI 10.30.12 mild central spinal stenosis L34 and L45. The possible impingement of the exiting left L3 nerve root. I will ask for urine tox screen authorization. I will also ask for caudal epidural injection authorizations. In addition, the lumbar spine back brace authorization will be requested. The patient will start with gabapentin 100mg PO qhs. The primary care physician [was] prescribing Lortab.

19   (*Id.* at pp. 9-10.) Another MRI occurred on January 28, 2013 finding "Multilevel
20   cervical spondylosis. No central stenosis. Maybe impingement of the exiting right
21   C4 nerve root." (*Id.* at p. 13.) Dr. Navarro evaluated Plaintiff "upon request from
22   Dr. Dan White for consultation for low back pain." (*Id.* at p. 10.) Dr. Navarro
23   evaluated Plaintiff again on June 18, 2013 and documents Plaintiff's first caudal
24   epidural injection. (*Id.* at pp. 15-16; *see also* ECF No. 35 at p. 12.) Plaintiff
25   received another caudal epidural injection on or around July 16, 2013. (*Id.* at p.
26   17.) Plaintiff also attaches four "Consultation Reports" from Dr. Daniel V. White
27   of "Brain & Spine Surgery" dated in or about December 2012, March 26, 2013,
28   May 28, 2013, and August 28, 2013. (*Id.* at pp. 11-12, 14; ECF No. 35 at p. 26.) In

the August 28, 2013 report, Dr. White quotes, presumably, Plaintiff stating "none of the injections helped . . . not even 1 minute." (ECF No. 35 at p. 26.) Lastly, Plaintiff attaches a letter from Dr. Cava addressed "To Whom It May Concern" dated September 26, 2014 indicating Plaintiff needs to see a pain management specialist but her referrals have been denied. (*Id*. at p. 22.)[3]

While the new evidence relates to a condition – low back pain – considered by the ALJ, it does not relate to the time period under consideration, that is, the time period on or before August 11, 2011.[4] The new evidence indicates, at most, deterioration after the disability hearing, which would be material to a new application, but not probative of Plaintiff's condition at the hearing. *Sanchez*, 812 F.2d at 511-12. Therefore, the Report properly determined the new evidence is not material. Accordingly, Plaintiff's objection to the Report's recommendation to deny Plaintiff's request for a remand to consider new evidence is **OVERRULED**.

**B. General Objection**

Plaintiff also appears to object generally to the Report's conclusion that substantial evidence supports the ALJ's decision. (Report at p. 26.) Plaintiff argues that she "has clearly demonstrated through initial evidence . . . she most

---

[3] Plaintiff also submits an estimate of benefits allegedly owed dated February 13, 2014 (ECF No. 29 at p. 19), an affidavit by her husband dated September 27, 2014 (ECF No. 35 at pp. 14-18), and an affidavit by her financial advisor dated September 27, 2014 (*id*. at pp. 20-21). However, these documents are not probative of any mental or physical impairment; therefore, the Court will not consider them in evaluating the request for remand. *See Key*, 754 F.2d at 1551.

[4] As the Report discusses, there is an illegible note on the letterhead of Dr. White dated in or about December 2012, and a second MRI of the cervical spine dated January 28, 2013, both of which occurred while Plaintiff's appeal was pending. (Report at p. 25.) However, these documents still do not relate to the time period under consideration, and the results of the MRI, as noted in the Report, appear equivocal at best. (*Id*.) Plaintiff also submits a "Follow-up Note" dated January 19, 2015 with her objections relating to her lower back pain. (ECF No. 39 at p. 4.) For the reasons stated herein, this evidence is also not material to the ALJ's decision.

definitely comes under the definition of being totally disabled" and asks the Court to "re-evaluate the case." (ECF No. 39 at pp. 1, 3.) It is well-settled, under Rule 72(b) of the Federal Rules of Civil Procedure, that a district court may adopt those parts of a magistrate judge's report to which no *specific* objection is made, provided they are not clearly erroneous. *Thomas v. Arn*, 474 U.S. 140, 153 (1985); Fed. R. Civ. P. 72 Advisory Comm. Notes (1983) (citing *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1973)). While this objection to the Report is not specific, in an abundance of caution, this Court conducted a *de novo* review of the Report. Upon review, the Court **OVERRULES** this objection and **ADOPTS** the Report in its entirety.

## IV. CONCLUSION & ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Objections to the Report (ECF No. 39) are **OVERRULED**;

(2) The Report (ECF No. 37) is **ADOPTED IN ITS ENTIRETY**;

(3) Plaintiff's motion for summary judgment (ECF No. 29) is **DENIED**;

(4) Defendant's cross-motion for summary judgment is **GRANTED** (ECF No. 33); and

(5) Plaintiff's request for a remand to consider new evidence submitted with her motion for summary judgment (ECF No. 29) and with her opposition to Defendant's cross-motion for summary judgment (ECF No. 35) is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 27, 2015

Hon. Cynthia Bashant
United States District Judge